# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL L. THOMPSON,**

    **Plaintiff,**

    v.        Case No. 13-CV-930

**WILLIAM HOLM,**
**MATTHEW LARSON,**
**RANDALL LASHOCK,**
**BRUCE BLEICH, and**
**JOHN DOE,**

    **Defendants.**

### DECISION AND ORDER ON DEFENDANTS' MOTION
### FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION
### TO AMEND RESPONSE TO PROPOSED FINDINGS OF FACT

Michael L. Thompson, a state prisoner, filed this lawsuit under 42 U.S.C. § 1983. He claims that his First Amendment right to free exercise of his religion was infringed when the defendants, employees of the prison, removed him from the Ramadan meal bag list for two days during Ramadan in 2010. This matter is now before me on the defendants' motion for summary judgment. For the reasons I will explain in this decision, I will grant the defendants' motion for summary judgment.

Thompson also filed a motion to amend his response to the defendants' proposed findings of fact to provide additional citations to his affidavit and other evidence. The defendants oppose this motion, but I will grant the motion and consider the additional citations Thompson provided.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## BACKGROUND

Thompson has been incarcerated at Waupun Correctional Institution ("Waupun") since October 31, 1997. The defendants were all employed at Waupun by the Wisconsin Department of Corrections during the time period relevant to the plaintiff's claims.

Thompson has listed his religious preference as Islam since arriving at Waupun in 1997. Thompson's participation in Islam includes saying daily prayers, fasting for Ramadan, and

2

doing charity when he can. Ramadan is a religious holiday that requires participants to fast between the hours of sunrise and sunset. He began fasting for Ramadan in 2000 and does so because he believes "every adult man should have some form of self-discipline" because it pleases God. (Affidavit of Paulson, Ex. 1006, 23:134, 17-21).

In 2010, Waupun inmates celebrated Ramadan beginning after sunset on August 10 until sunset on September 9. During that time, Thompson was housed in the Northwest Cell Hall. Thompson was on the Ramadan participant list in 2010. However, he missed out on two meal bags, one on August 21 and one on August 22. Each meal bag contains two meals. On the morning of August 21, Thompson ate his remaining food from the previous night's meal bag, as the bags were intended to be eaten. Thompson began receiving meal bags again on August 23.

On a date prior to August 21, 2010, Thompson was found in his cell with two Ramadan meal bags. The exact date is dispute, but that is not material. That day, Officer Lashock left one meal bag for Thompson in his cell because he knew Thompson was at work in the library. Due to his work hours, Thompson was not always in his cell to receive his Ramadan meal bags. However, that same day Thompson had also accepted a Ramadan meal bag from an officer he passed in the hallway on his way back to his cell from work in the library. When Thompson returned to his cell and realized he had two meal bags, he did not want to leave his cell to alert Officer Lashock or another staff member because he feared that he would be subject to a conduct report for loitering. Thompson believed the best thing to do was to wait until the officer came to his cell and then return the bag, which is what he did.

When Officer Lashock returned to the unit that evening, the other officer told Officer Lashock that he had given Thompson a bag. Officer Lashock then went to Thompson's cell to retrieve the extra Ramadan bag. According to Officer Lashock, he noticed when he got to

3

Thompson's cell that Thompson had both bags open and was eating various contents from both of the bags. However, Thompson maintains that he only ate the contents from one bag and that he was able to return the extra bag to Officer Lashock uneaten. According to Thompson, he had the two meal bags in his cell for about an hour before Officer Lashock came to his cell and asked him if he ate the extra bag.

An inmate who steals food, such as a Ramadan meal bag, is subject to discipline under Wisconsin Administrative Code Chapter 303. Thompson was told that there would be a conduct report written about the incident. He was told later that there was not going to be a conduct report for theft of the bag. Officer Lashock believes that he wrote Thompson a conduct report for taking an extra Ramadan meal bag and submitted it for review, but the records reveal that no conduct report was ever processed.

While he never received a conduct report for theft of a Ramadan bag, Thompson was told shortly after this incident that he had been removed from the list of Ramadan participants due to theft of a Ramadan bag.

The first day Thompson did not receive a Ramadan meal bag was Saturday, August 21, 2010. On the morning of August 21, 2010, Thompson ate leftover food from the previous evening's bag. He then kept his fast throughout the day.

On Saturday, August 21, 2010, and Sunday, August 22, 2010, Officer Lashock was assigned to work on Thompson's unit on second shift from 2:00 p.m. to 10:00 p.m. During these shifts, Officer Lashock was responsible for delivering the Ramadan meal bags at approximately 7:00 p.m. On Saturday night, Officer Lashock says he was passing out Ramadan meal bags and Thompson asked where his meal bag was. Officer Lashock says he then checked the Ramadan meal bag list and Thompson's name was not on it. According to Thompson, Officer Lashock

came to Thompson's cell with a Ramadan meal bag in hand and stated that he did not have one for him.

Officer Lashock did not personally remove Thompson from the Ramadan list, and he does not know who did. Officer Lashock would not personally remove an inmate from a religious diet list unless he was ordered to do so by someone higher up the chain of command.

After being told that he had been removed from the Ramadan list for stealing a Ramadan meal bag, Thompson asked to speak to a sergeant. Defendant Sergeant Matthew Larson, who was covering the shift for the normal sergeant on the unit, came to speak to him. Thompson says that defendants Lashock, Larson, and Bleich told Thompson that he had been removed from the Ramadan list for theft and that he would have to go to the chow hall if he wanted to eat. However, the chow hall was already closed for the day, and Thompson was locked in his cell. Sergeant Larson was not offering Thompson a chance to obtain food that night. He was talking about future meals or the rest of Ramadan. Thompson believes that the defendants wanted him to go to the chow hall so they could have a valid reason to talk to the Chaplain to get him to remove Thompson from the Ramadan list.

Sergeant Larson's only involvement in this incident was speaking with Thompson on August 21, 2010. He does not know any of the details behind the theft incident. Sergeant Larson says that if an inmate asked him why he was not on the Ramadan list, he would call Food Service and talk to a supervisor and advise the inmate to write to Food Service and the Chapel to ask why he was not on the list.

On August 22, 2010, Thompson continued to fast. He could have gone to the chow hall for his meals that day, but he chose not to. The defendants submit that Thompson could have brought two pieces of fruit back to his cell if he had gone to the chow hall, but Thompson asserts that Food Service only serves one fruit with regular meals. Thompson also believes that if he

5

had gone to the chow hall, he would have been refused Ramadan meals for the rest of Ramadan and would not have been placed back on the list until next year.

Thompson says that he was told again that he had been taken off the Ramadan list when it was time for evening Ramadan bags to be handed out on August 22, 2010. Thompson again asked to speak to a sergeant and defendant Bruce Bleich stopped by to speak to him. Bleich told Thompson that if he wanted to eat, he would have to go to the chow hall. The defendants submit that this was Bleich's only personal involvement, but Thompson testified at his deposition that Bleich was there the night before when Lashock alleged Thompson stole the bag. According to Thompson, Bleich also delivered a message for defendant William Holm to try to pressure the plaintiff to go to the chow hall so that they could have a reason to go to the Chaplain to have Thompson removed from the Ramadan list.

Thompson says that he "probably ate some snack food here and there after the fast" on the evening of August 22, 2010. (Paulson Aff., Ex. 1006, 65:2-4). Thompson had some food in his cell that he had purchased from the canteen. He maintains that all he had to eat that evening was tortilla shells and water. Thompson had a practice of eating one tortilla shell with the meat and cheese from the Ramadan bag each night instead of the bread buns from the Ramadan bag. He had made other canteen purchases during Ramadan, but none of that food lasted more than three days. It was Thompson's practice to eat canteen food in the morning before he started the day's fast. Then, after a day of fasting, Thompson would eat the contents of the bag designated as dinner.

During the weekend of August 21 through 23, 2010, Thompson did his prayers and read the Quran. Thompson chose not to work out during recreation that weekend because he was trying to conserve energy. The defendants suggest that this was no different than a normal

weekend during Ramadan for Thompson, during which he would typically sit in his cell and pray.

When asked at his deposition how his health had been affected by not receiving meal bags on August 21 and 22, 2010, Thompson said the only effect was that he was tired and trying to conserve his energy. He also adds that he had hunger pains, the worst of which was Monday, August 23. He missed prayers that morning and did not wake up until first shift came on.

On Monday, August 23, 2010, both the Chaplain and Food Service Administrator Robert Tuckwell came to speak to Thompson. Tuckwell told Thompson that he was being added back to the Ramadan list. Thompson further submits that Tuckwell said they were wrong for taking Thompson off the Ramadan list, but Tuckwell would not tell Thompson who "they" were and would not put anything in writing. Thompson was put back on the Ramadan list and began receiving meal bags on the evening of August 23, 2010.

Tuckwell vaguely remembers putting an inmate back on the Ramadan list after his name was sent to food service to be removed from the list by mistake. He is not sure who informed him that the inmate should be removed, or who informed him to put the inmate back on the Ramadan list. Tuckwell would only remove an inmate from the Ramadan list if he was told to do so by the Chaplain or by security staff.

None of the defendants personally removed Thompson from the Ramadan list. None of them believed they had the authority to do so. It is possible that Captain Holm communicated to unit staff that Thompson took an extra Ramadan meal bag and that there was going to be a conduct report written concerning the incident. If Captain Holm stated this to unit staff, they could have misinterpreted it to mean that Thompson was going to be taken off the list. He suggests that the removal of Thompson from the Ramadan list could have been miscommunication or error.

There is also no record in the chapel of Thompson being removed from the Ramadan fasting list in August 2010 by the Chaplain.

## DISCUSSION

The defendants argue that they are entitled to summary judgment on Thompson's First Amendment free exercise claims because: (1) Thompson's removal from the Ramadan list did not substantially burden his exercise of his religion and was reasonably related to legitimate penological interests; (2) they were not personally involved in Thompson's removal from the Ramadan list; (3) Thompson is only entitled to nominal damages; and (4) they are protected by qualified immunity.

Thompson argues that he was denied his right to free exercise of his religion. Thompson argues that his spiritual experience of Ramadan was diminished, which was a substantial burden. He also contends that the defendants were personally involved, that he is entitled to damages, and that the defendants are not entitled to qualified immunity.

Thompson's claims allege an unconstitutional exclusion from participation in Ramadan fasting in violation of the Free Exercise Clause of the First Amendment pursuant to § 1983. A threshold question under the Free Exercise Clause is whether Thompson can show that defendants substantially burdened a "central religious belief or practice." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). The defendants concede for the purposes of summary judgment that fasting for Ramadan represents a central religious practice.

Thus, the principal dispute is whether the removal of Thompson from the Ramadan participation list, which resulted in him missing two Ramadan meal bags, constituted a substantial burden on Thompson's religious exercise. A substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342

F.3d 752, 761 (7th Cir. 2003). A prison action does not substantially burden a prisoner as long as he is still able to practice his religion effectively. *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).

The defendants argue that Thompson was not substantially burdened by being removed from the Ramadan fasting list for two days because it did not prevent him from effectively practicing Islam. On the other hand, Thompson, citing to *Makin v. Colorado*, 183 F.3d 1205, 1211 (10th Cir. 1999), argues that the defendants forced him to choose between adequate nutrition and observing Ramadan as required, which substantially diminished his "qualitative spiritual experience."

The facts in *Makin* are materially different from this case. In *Makin*, a prison policy prohibited inmates in segregation from participating in "special feeding activities" related to Ramadan. *Id.* at 1208. Accordingly, the inmate in *Makin*, who was in segregation, was denied the right to participate in special feeding activities for the entire 30 days of Ramadan. He maintained his fast by saving dry cereal and crackers from lunch and breakfast. *Id.* at 1209. By contrast, Thompson's removal from the Ramadan participation list resulted in him missing only two meal bags. This is not to say that missing two meal bags during Ramadan is trivial. However, the difference between the facts in *Makin* and this case are significant because the question is not whether there was any burden, but whether there was a substantial burden. While denying meals for 30 days (the entirety of Ramadan) may constitute a substantial burden, it does not follow that denying special meals for two days constitutes a substantial burden, too.

The defendants argue that this case is more analogous to *Norwood v. Strada*, 249 Fed. Appx. 269 (3d Cir. 2007). I agree. In *Norwood*, the Third Circuit held that a prisoner's rights were not substantially burdened when he did not receive a religiously certified halal meal over the course of seven meals during a time that the entire prison was placed on an emergency

lockdown. *Id.* at 271-72. The Third Circuit distinguished cases like *Makin* by noting that the inmate was denied his religious diet for a short time period and that the plaintiff provided no evidence that the brief interruption forced him to abandon one of the precepts of his religion or that he felt a substantial pressure to modify his beliefs. *Id.* at 272.

Like the inmate in *Norwood*, Thompson has provided no evidence that missing the two meal bags forced him to abandon one of the precepts of his religion. Thompson was still able to complete his fast, had some food available to break his fast, prayed and read the Quran, and was placed back on the list after missing only two meal bags. *See Koger v. Bryan*, 523 F.3d 789, 798 (7th Cir. 2008) ("a substantial burden on the free exercise of religion . . . is one that forces adherents of a religion from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs"). On this record, no reasonable trier of fact could find that missing two meal bags rendered Thompson's religious exercise effectively impracticable, and therefore the defendants are entitled to summary judgment. Because I find that there was no substantial burden on Thompson's religious exercise, I need not address the parties' additional arguments regarding the defendants' personal involvement, damages, or qualified immunity.

Finally, Thompson was allowed to proceed against a John Doe who made the decision to remove the plaintiff from the Ramadan list. The court instructed Thompson to use discovery to attempt to identify this John Doe and then move the court to substitute the defendant's name for John Doe in the caption. Thompson never identified who actually removed his name from the Ramadan list. The resolution of Thompson's claims necessarily includes any claims he may have against this John Doe. However, I cannot enter judgment in John Doe's favor so he will be dismissed with prejudice.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket #20) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that Thompson's motion to amend response to proposed finding of fact (Docket #36) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that John Doe be and hereby is **DISMISSED WITH PREJUDICE** as a defendant in this case.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 30th day of March, 2015.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge